## THE HENRY B. FISKE.

(District Court, D. Massachusetts.　October 18, 1905.)

No. 1,713.

1. SEAMEN—INJURY FROM BREAKING OF APPLIANCE—LIABILITY OF VESSEL.

A vessel is liable for an injury to a seaman, resulting from the breaking of a fitting or appliance, only when those who represented her failed to exercise reasonable care to make the fitting or appliance safe, and where the breaking was due to a defect which might, with reasonable care, have been discovered and remedied.

2. SAME.

A schooner was anchored during a severe gale, when a patent spring rider, which held one of the two anchor chains in use, broke, allowing more chain to suddenly run out from the locker, by which libelant, who was a seaman, and engaged in cleaning the locker, was struck and injured. The part of the rider which broke was made of cast iron, which was the material ordinarily used, and showed no defect. The appliance was not old, was made by a reputable manufacturer, was apparently in good condition, and had been in use without breaking for several hours under substantially the same strain, as well as on previous occasions. *Held,* that the vessel was not liable for the injury, either because of the breaking of the appliance, or because of negligence in the officer in sending libelant into the locker at that time; there being no reason to apprehend unusual danger.

3. SAME—INJURY IN SERVICE—EXPENSE OF CURE.

A seaman was injured without his fault while in the service of a vessel, and was taken to a hospital after the completion of the voyage, at the charge of the vessel, from which he was subsequently discharged as cured. It appeared, however, that he had received other injuries than those treated, which prevented him from working, and made it necessary for him to obtain board, medical attendance, and nursing for a considerable time after his discharge. *Held,* that he was entitled to recover from the vessel the expense so incurred.

In Admiralty.　Suit by seaman to recover for personal injuries.

Frank S. Harlow, for libelant.

Lowell & Lowell, for claimant, owners, and master.

DODGE, District Judge.　The libel in this case claims damages for personal injuries received by the libelant while serving as a seaman on board the schooner.　Its language is for the most part that properly belonging to a libel in rem against the schooner, and the process issued upon it was the warrant and monition usual in such a suit.　There was no arrest of the vessel, but due service of the warrant and monition upon her, and also upon her master and her owners, has been acknowledged by counsel representing them all.　In the answer which has been filed by the owners they claim the vessel.　The libel is capable of being construed as a libel against the master and the owners, as well as against the schooner, and both counsel have treated it as such a libel for the purposes of the hearing.

The cause of action is not one which brings the suit within admiralty rules 12–20.　The question whether a suit in rem against the vessel can properly be joined with a suit in personam against the master or the owners may therefore be regarded as open.　The Corsair, 145 U. S.

335, 342, 12 Sup. Ct. 949, 36 L. Ed. 727. In view of the facts that the owners of the vessel have raised no objection to the libel, either as claimants of the vessel or as defendants, and that no objection has been raised by the master, who has filed a separate answer, the libel will be treated as properly brought against vessel, owners, and master. The question to be decided will therefore be whether or not the libelant is entitled to recover against either. See The S. L. Watson, 118 Fed. 945–951, 952, 55 C. C. A. 439.

The libelant's injuries were caused by the breaking of a patent rider, which formed part of the tackle, apparel, and furniture of the schooner libeled, on which vessel he was at the time serving as seaman. The schooner, bound from Brunswick, Ga., to Boston with lumber, had been obliged to anchor on Nantucket shoals by a heavy northeast snowstorm. Both anchors were down, and about 90 fathoms of chain out on each anchor. This was nearly all the chain there was, and only a few fathoms of each chain were left on board. A patent rider was used upon each chain, the effect of the rider being, by clutching the chain at a point between the hawse pipe and the windlass, to put the strain of the chain as the vessel surged upon springs contained in the rider, which would in some degree yield to sudden strain and then recover, thus securing an elastic, instead of a rigid, attachment to the vessel. The wind was blowing very heavily and the sea running very high; it was snowing, and the schooner was considerably iced, the weather being very cold. On the morning of January 24, 1905, the starboard rider broke. The schooner had been at anchor when this happened, under substantially the same conditions since the day previous. The grip of the rider upon the starboard chain being thus suddenly released, the chain was suddenly dragged out as far as it would go. As it came upward, out of the starboard chain locker below the lower deck, it struck the libelant, who was engaged at the time in cleaning out the locker, and was standing in the vicinity of the chain. He was in an opening whereby access was had to the locker from the lower deck, and was sufficiently near the chain to be struck by it as it came up. The opening was made by removing two movable planks, forming part of the covering of the locker at the level of the lower deck, in the between-decks. His feet were in the locker, upon the timbers or ceiling of the vessel; the level of the covering of the locker coming about at his waist as he stood in the opening. He was stooping over with a shovel and broom, engaged in removing dirt, which had accumulated from the chain upon the sides or bottom of the locker. By the blow of the chain, he was thrown out of the locker, and rendered unconscious. One, at least, of his left ribs was broken, causing a puncture of his left lung, and he sustained other injuries referred to below. Another man, also in the chain locker at the same time, received no injury. Regarding the above facts, there is no controversy.

1. Damages are claimed by reason of an alleged unsound and defective condition of the rider, which broke. No evidence was offered to prove that the rider was unsound or defective beyond the fact that it broke. Upon the respondent's uncontradicted evidence, it appears

that the vessel was about three years old at the time; that the rider was put into her when she was built; that the part of it which broke was of cast iron; that this is the material commonly used in constructing such appliances, or the corresponding parts thereof; that the rider was bought for the vessel from a reputable and well-known concern, namely, the Bath Iron Works, of Bath, Me., accustomed to manufacture and supply to vessels riders of similar material and construction; that since the vessel was built she had been engaged in making similar voyages, during which the rider had been used whenever occasion required; that the master of the vessel had himself oiled and examined it only a few days before the accident, finding it in apparent good condition; and that the fragments of the broken part of the rider were examined immediately after the accident, but afforded no indication of flaw or defect in material or construction. Unless the owners or master were negligent in regard to the condition of the rider, neither they nor the vessel are liable for the injury to the libelant caused by its breaking. As regards the crew employed on board a vessel, there is no warranty on her part that none of her fittings or appliances shall at any time give way, to their injury. Liability on her part, in the case of an accident of this kind, is incurred only when those who represent her have failed to exercise reasonable care to make the fitting or appliance safe, and arises only out of such defects as reasonable care on their part would have discovered and remedied. The Edith Godden (D. C.) 23 Fed. 43; The France, 59 Fed. 479, 8 C. C. A. 185; The Robert C. McQuillen (D. C.) 91 Fed. 685. The fact that this rider broke may be taken as prima facie proof of negligence in regard to its condition; but the proof that due care was in fact used, so far as the vessel was concerned, is in my opinion amply sufficient to overcome any presumption thus arising. The rider had been tested for the work it was expected to do by its previous use on board. The length of time during which it had been subjected to such use was not sufficient, so far as appears, to afford any ground for supposing that its strength might have become impaired by use or wear. It had held during the previous night and day, under substantially the same test of its strength as that to which it yielded. All that inspection could accomplish toward discovering any weakness in its condition appears to have been done by the master only a short time previously. If it be true that wrought iron, or some metal stronger than cast iron, would have stood a greater strain, it is still impossible to say that the use of cast iron was negligence, in the absence of evidence that anything but cast iron is used for the same purposes, and the evidence that cast iron is the material generally used. In my opinion, no negligence has been shown for which the vessel, her owners or master, are liable, and the rider was not, therefore, unsound or defective in such sense as to give the libelant a right to recover damages against them, or either of them.

2. The libelant contends that it was negligence on the master's part to order him, or permit the mate to order him, to work in the chain locker at a time when the rider was under more than ordinary strain, and proximity to the chain therefore dangerous because of the chance that it might break. But there was, on the evidence, no reason for believing

the rider defective, and no reason for anticipating that it would break. There was no danger from the chain while the rider held, and it had held, as has been said, for many hours under like conditions. The libelant's evidence was that he remonstrated to the mate against going into the chain locker, on account of the danger of getting hurt if anything should break. The mate denied that any such remonstrance was made. The master was not present at the time. I regard it as immaterial whether such remonstrance was made or not, and also immaterial that it would have been possible to clean the chain locker at some time when there would have been less strain on the chain. The selection of the time for doing the work belonged to the officers of the vessel, and the circumstances shown do not disclose such danger necessarily involved in doing the work at the time selected, and then apparent, as warrants the conclusion that the time was selected without due regard to the libelant's safety. If no sufficient reason appears why the breaking of the rider should have been anticipated, such danger as lay in the possibility of its breaking was a risk assumed by the libelant as incident to his employment.

3. By an amendment to his original libel, the libelant has claimed against "said libelees" an alleged expense of $228.46, incurred since his injury for medical attendance, medicines, nursing, board, and lodging. The libelant was injured in the service of the vessel, and the vessel or her owners are therefore liable to him to the extent of his maintenance and cure, and his wages so long as the voyage is continued. The Osceola, 189 U. S. 158, 175, 23 Sup. Ct. 483, 47 L. Ed. 760. No question arises as to his wages; they have been paid to the end of the voyage. As to maintenance and cure, such care and attendance as could be given him on board was provided until the arrival of the vessel at Boston on January 28th. He was sent, upon her arrival, to the U. S. Marine Hospital at Chelsea, and remained there, under hospital treatment, from January 28 until March 20, 1905, when the hospital authorities discharged him, because they considered his cure complete so far as hospital treatment could accomplish it. He had been out of bed and able to sit up since March 1st. The injuries to his ribs and lung were healed. These seem to have been the only injuries of which any notice was taken at the hospital, and he had been there considered able to go out for some days before his final discharge on March 20th. His evidence is that his left leg, besides being cut or bruised, was seriously strained at the time of the accident; that it remained swollen for some time afterward; that, when discharged from the hospital, he was still too lame to go about or to work by reason of this injury to his leg; that he was also very weak, and unable to eat ordinary food; that after March 20th he had to be provided with board and lodging, and to be nursed and cared for until August 4th; also, that he was obliged, by reason of his condition, to incur an expense of $6.81 for medicines and $25 for medical attendance. His evidence was so far confirmed by that of the man at whose house he was cared for during this period and that of the physician who attended him as to satisfy me that the cure of all his injuries was not complete, so far as it was to be effected by ordinary medical means, at the time he left the hospital. While the injuries to his

ribs and lung were then substantially cured, the strain or other damage to his leg and the weakness resulting from injuries so extensive and severe may well have required further rest and treatment, and, on the evidence, I find that further treatment was required. It has recently been decided in this court that, when he has been injured in the service of the vessel, the right of a seaman to maintenance and cure at the vessel's cost does not necessarily terminate with the voyage. McCarron v. Dominion Atlantic Railway Company (D. C.) 134 Fed. 762, 764. The libelant lives in Virginia, and had no home or family in Boston. It being necessary, in my opinion, that he should be taken care of somewhere after he left the hospital, the charge of $10 per week, which was made for his board and lodging and such nursing as was required, seems to me not unreasonable under the circumstances shown. I do not think, however, that he is entitled to claim support and nursing at the vessel's expense during the entire period of four and one-half months between March 20th and August 4th. The physician who attended him did not see him for the purpose of treating his injuries after May 20th, and I think the time for which the vessel is to pay ought not to be extended beyond that date. I allow $80 for eight weeks' board and nursing and the amounts claimed for medicines and medical attendance—in all, $111.81. For this amount, with costs, there is to be a decree against the vessel in rem. There will then be no reason for any decree against the owners in personam. As against them, and as against the master, the libel is dismissed, without costs.