## DOUGHERTY v. THOMPSON–LOCKHART CO.

(District Court, E. D. Pennsylvania. February 26, 1914.)

No. 14 of 1913.

1. MASTER AND SERVANT (§ 279*)—INJURIES TO SEAMAN—EVIDENCE OF NEGLI-
GENCE.

On a claim against the owners of a tug and tow for injuries to a sea-
man in charge of the tow by getting his foot crushed in a line he was ad-
justing around a cleat on the scow, evidence *held* insufficient to show
that the accident was caused by the negligence of the operators of the tug.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–
975, 978–980; Dec. Dig. § 279.*]

2. MASTER AND SERVANT (§ 200*)—INJURIES—FELLOW SERVANTS.

Where a tug and tow belonged to the same person and were engaged in
the same service, the master of the tug was a fellow servant of a seaman
on the tow.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 492;
Dec. Dig. § 200.*]

3. SEAMEN (§ 11*)—INJURIES TO SEAMAN—LOSS OF FOOT—MAINTENANCE AND
CURE.

Where a seaman's foot was caught and crushed in a line from a tug
which he was making fast on a scow, and he was in a hospital for three
months, where he was maintained and cared for by the owner of the ves-
sels free of charge but could not work for nine months longer, and had
spent money for medicines, crutches, and an artificial foot which had
been once renewed, and he still owed for board during the time he was un-
der disability, an allowance of $500 would be made under the obligation
of the owner to furnish maintenance, cure, and wages to a seaman who
falls sick or is wounded in the service of the ship.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 39–44, 187; Dec.
Dig. § 11.*]

In Admiralty. Claim by William Dougherty against the Thompson-
Lockhart Company for personal injuries to claimant as a seaman, and
petition by respondent for a limitation of liability. Decree for plaintiff
for $500.

James J. Breen and Willard M. Harris, both of Philadelphia, Pa.,
for claimant.

Howard M. Long and Charles S. Wesley, both of Philadelphia, Pa.,
for respondent.

J. B. McPHERSON, Circuit Judge. On November 21, 1910, the
claimant, William Dougherty, was in the employ of the Thompson-
Lockhart Company as the master of a barge or scow, and in the course
of his service suffered an injury on that day. Asserting the negligence
of the company, he brought suit in the common pleas of Philadelphia
county, but proceedings for limitation of liability were afterwards be-
gun in the district court, and the dispute was thereby transferred to
the federal tribunal. No other claimant or creditor has appeared. Sev-
eral preliminary steps have been taken, but they need not be referred
to; it is enough to say now that the parties and their witnesses ap-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

peared in court recently and were fully heard upon the merits, both sides submitting the whole controversy for final determination.

The first question in order of importance is whether the company is chargeable with negligence. The facts are as follows:

The Thompson-Lockhart Company is a Pennsylvania corporation, and none of its officers was directly connected with the claimant's injury. The tug "J. McAteer" and the scow were both owned by the company, and were engaged as a tow in carrying rubbish down the Schuylkill river for the city of Philadelphia. Both vessels were properly manned and equipped. Dougherty, who was the master of the scow and had been so employed for about three weeks, was the only person on board that vessel; no further help being usual or necessary. Toward noon on the morning in question the tug and the loaded scow were proceeding down the river bound for a point on the eastern shore near Penrose Ferry Bridge; the tide being ebb and the day fair. The scow was lashed to the port side of the tug in the usual manner, being held in place by lines at the bow and the stern, and moved. by a running or towing line that was made fast more nearly amidships on both vessels. All the lines were provided with the usual eye or loop at one end. The eyes of the bow and the stern lines were laid around cleats on the deck of the scow, and the loose ends were made fast upon the deck of the tug. 'The eye of the running line was similarly adjusted, but upon the deck of the tug, and the loose end was fastened around a cleat on the deck of the scow. When the lines were not in use, the bow and the stern lines were hauled in upon the tug, and the running line was hauled in upon the scow.

[1] When the tow reached a point about two city squares above its destination, the tug was obliged to shift her place and to take the scow upon her starboard side in order to make the landing. In the proper execution of this maneuver, all the lines were cast off, the bow and the stern lines were hauled in upon the tug, and the running line was hauled in upon the scow. The scow moved along slowly by her own momentum aided somewhat by the tide, while the tug dropped astern and then came forward close to the port side of the scow. Her steam was shut off, but she also was moving slowly by momentum and the favoring tide. The next step was to fasten the lines again, and while this was going on the claimant suffered the injury complained of. Just how the unfortunate accident occurred, the testimony does not distinctly disclose; the claimant himself did not know, and the evidence leaves it in some uncertainty. But in my opinion the negligence of the company was not proved, while the negligence (or at least the misfortune) of the claimant seems to be the probable, and the sufficient, explanation. It is clear enough that the claimant brought a running line from the starboard side of the scow to the port side—either the running line that had already been used on the voyage, or perhaps a substitute, this fact being of little importance—and that one line at least (perhaps both) of these two was lying in disorder on the deck of the scow near the cleat to which the loose end was to be made fast. It is also clear that the eye of the bow line had been thrown over its proper cleat on the scow by a man on the tug, and that the claimant had hand-

ed the eye of the running line to another man on the tug by whom it had been made fast. After this had been done, it was still necessary to put the eye of the stern line over its appropriate cleat on the scow, and to make fast the loose end of the running line around the other cleat on the scow that was provided for this purpose. These were among the claimant's duties. He had partly discharged one of them—that is, he had taken a turn or two of the running line around its own cleat—when apparently he became confused or flustered in trying to put the eye of the stern line over the cleat a little further aft, and by some misadventure his right foot became entangled in a bight of the running line and was drawn against the cleat and badly crushed. If he had taken proper care of his steps, the injury would not have happened. He charges the master of the tug with negligence in starting prematurely, but the weight of the evidence is against him. His own bias was so marked as to impair his testimony, and if his account be disregarded there is practically nothing to support his theory. I am satisfied that the tug and the scow were not started prematurely, but were only moving slowly by their momentum and the tide; although the tug was not under steam, the weight of the vessels was enough to do the damage complained of. The pain naturally caused the claimant to cry out, and his plight was discovered immediately, whereupon the tug was at once backed in order to relieve the strain on the line, and two of the crew hastened to the claimant's aid. He was taken to the cabin of the scow and was given such care as could then be afforded; the tug went at full speed to her destination, calling through a megaphone for help and an ambulance. As speedily as possible a small boat came out to the scow, and the claimant was taken ashore and afterwards to a hospital, where the foot was taken off after an ineffectual effort to save it.

The claimant sought to establish the unrestricted liability of the company by attempting to prove that the master of the tug was a man of intemperate habits, and that the company continued to employ him with knowledge of such habits. Moreover, he charged and attempted to prove that the master and crew of the tug were under the influence of liquor on the morning in question, and this fact, of course, would have had much pertinence. In my opinion, however, neither attempt was successful. No doubt the master uses liquor occasionally—and so used it at that time—but the evidence did not establish either his intemperate habits in general or the use of liquor on November 21st, and nothing whatever was proved that would prevent the company from taking advantage of the acts of Congress limiting the liability of shipowners. But of course, if the claimant failed to establish the company's negligence—and in my opinion he did so fail—the question of limitation is no longer of importance.

[2] Moreover, under the decision in The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, the question of limitation would not be important, even if the claimant had proved that his injury was due to the negligence of the tug's master. I lay aside the fact that the tug and the scow had a common owner, but the evidence seems to make it clear that they were not independent vessels engaged upon separate

voyages or prosecuting independent objects; in effect, they were one vessel engaged in the same enterprise and co-operating to produce the same result. The master of the tug was therefore the fellow servant of the claimant, and the fourth proposition laid down in The Osceola establishes the principle that in such case the common employer is not liable for the negligence of the master:

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

[3] But the company concedes its liability under the fourth proposition just quoted, and also under the first:

"1. That the vessel and her owners are liable, in case a seaman falls sick or is wounded in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued."

See, also, the recent case in this circuit of The Mars, 79 C. C. A. 435, 149 Fed. 729.

Under the evidence, I think an allowance of $500 and interest should be made. The claimant was in the hospital for three months, where he was maintained and cared for free of charge. But he could not work for about nine months longer, and he has spent money for medicine, crutches, and an artificial foot (once renewed), and still owes for boarding during the time he was under disability. A decree may therefore be entered for $500, with interest from November 21, 1911, and costs.