### GEISTLINGER v. INTERNATIONAL MERCANTILE MARINE CO.

(District Court, S. D. New York. January 25, 1924.)

**1. Seamen ⬳11—Shipowner not liable for failure of physician to send injured pantryman to hospital for expert treatment.**

Where a pantryman on a ship had been brutally assaulted, and there was a possibility that his nose was fractured, but whether it was in fact could not be detected by an ordinary examination, the failure of the ship's physician to send him to a hospital for expert treatment *held* an error of judgment, for which the shipowner would not be liable.

**2. Seamen ⬳11—As far as injured pantryman is concerned, ship's surgeon need not be licensed.**

Act Aug. 2, 1882, § 5 (Comp. St. § 8002), requiring a ship to carry a medical practitioner for emigrant passengers, has no application to cabin passengers or the crew, and hence, as far as an injured pantryman's right to recovery is concerned, it is immaterial whether the ship's surgeon had a license.

**3. Seamen ⬳29(5)—Act extending to seamen statutes covering railway employees not applicable to suits in admiralty.**

Jones Act, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), authorizing a seaman injured in the course of his employment to maintain an action at law, in which all statutes covering injuries to railway employees shall apply, does not apply to suits in admiralty.

**4. Seamen ⬳11—Injured pantryman entitled to maintenance and cure after voyage terminated.**

A pantryman, brutally assaulted by the crew, *held* entitled to maintenance and cure for a reasonable time after the voyage terminated.

In Admiralty. Libel by Edward Geistlinger against the International Mercantile Marine Company. Decree for libelant for $300.

Silas B. Axtell, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Samuel C. Coleman, of New York City, of counsel), for respondent.

WARD, Circuit Judge. The libelant, a pantryman on the steamship Philadelphia, sues to recover indemnity in the sum of $5,000 for personal injuries. August 17, 1920 (Tuesday), at about 10:30 p. m., he was brutally assaulted at Southampton, England, by some of the crew, who were coming on board from shore leave. His wounds were on his forehead, scalp, nose, and jaw; they were dressed and sutured that night, as far as the great swelling of his face would permit, which continued for several days afterwards. He received treatment from the ship's surgeon or his assistant during the voyage to New York.

Saturday, August 21, the steamship sailed from Southampton, arriving at New York on the 29th, and the libelant was paid off the 30th. He was given a ticket for admission to the United States Marine Hospital at Stapleton, Staten Island, but by mistake went to the Broad Street Hospital, where he received treatment, and on September 4 was admitted to the Marine Hospital and discharged "recovered" on the 23d. An X-ray taken September 7 showed "a small piece of bone broken off from tip of nasal spine of the frontal bone and displacement backward of the nasal bone." The nasal spine is a sliver, tapering to a tip, at the broad part of the bridge of the nose between the two

nasal bones.   The evidence is that this could not have been detected when the nose was swollen and that it cannot be set.   The report also advised removal of the nasal septum in about a month, but there is no evidence that anything has ever been done about it since.

[1]  The libelant, who impressed me as an honest man, testified very vaguely about a request to the ship's doctor to be sent to a hospital in Southampton, which the doctor does not recall.   The charge made against the ship's surgeon is that, there being a possibility of a fracture of the nose, which could not be detected at the time, he should have sent the libelant to a hospital at Southampton for expert treatment.   I think this would be an error of judgment on his part for which the shipowner would not be liable.   Besides, there is no evidence that if he had been left at Southampton the treatment there would have been different from what he received on board, or that a better result would have ensued.   There is no evidence that the nasal spine was ever set nor any evidence of decayed bone.

[2]  The libelant was permitted at the end of the trial to amend his libel by setting up that the ship's doctor had at the time no license to practice from the state of New York.   For this reason it is contended that the steamship was unseaworthy as to him.   The doctor had taken a three years' course in the College of Pharmacy of Valparaiso, Ind., had graduated from the Medical Department of Fordham University after a four years' course, and had been an interne of the Knickerbocker Hospital of this city, and shortly after this event was licensed to practice in the state of New York.

The only statute requiring vessels to carry doctors is the Act of August 2, 1882, 22 Stat. 186, c. 374, entitled "An act to regulate the carriage of passengers by sea."   Section 5 (Comp. St. § 8002) provides:

"Sec. 5.  *  *  *  And every steamship or other vessel carrying or bringing emigrant passengers, or passengers other than cabin passengers, exceeding fifty in number, shall carry a duly qualified and competent surgeon or medical practitioner, who shall be rated as such in the ship's articles, and who shall be provided with surgical instruments, medical comforts, and medicines proper and necessary for diseases and accidents incident to sea voyages, and for the proper medical treatment of such passengers during the voyage, and with such articles of food and nourishment as may be proper and necessary for preserving the health of infants and young children; and the services of such surgeon or medical practitioner shall be promptly given, in any case of sickness or disease, to any of the passengers, or to any infant or young child of any such passengers, who may need his services.   For a violation of either of the provisions of this section the master of the vessel shall be liable to a penalty not exceeding two hundred and fifty dollars."

This it will be seen requires a medical practitioner for emigrant passengers only and not for cabin passengers nor for the crew.   The rights of the crew are left subject to the general maritime law in this respect and the libelant received far better attention than it requires.   As to him it is quite immaterial whether the ship's surgeon had a license or not.

[3]  The libelant next relies upon section 33 of the Jones Act of June 5, 1920, 41 Stat. p. 988 (Comp. St. Ann. Supp. 1923, § 8337a):

"That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law,

with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

[4] This act does not apply to suits in admiralty at all, as its language shows. Under the decision of the Circuit Court of Appeals of this circuit in the case of The Bouker, 241 Fed. 831, 154 C. C. A. 533, I think the libelant was entitled to maintenance and cure for a reasonable time after the voyage terminated. The respondent contends that if this conclusion is reached the libelant is only entitled to maintenance and cure for four months after his discharge from the hospital, during which time he was out of work, and suggests $300, which I think a liberal allowance. He may take a decree for this amount.