## BATTICE v. UNITED STATES et al.

United States District Court
S. D. New York.
April 16, 1948.

William L. Standard, of New York City (Herman Rosenfeld, of New York City, of counsel), for libelant.

John F. X McGohey, U. S. Atty., of New York City, for respondent United States.

Corydon B. Dunham, of New York City (Maurice J. Smith, of New York City, of counsel), for respondent States Marine Corporation.

KENNEDY, District Judge.

Battice alleges in his libel that while employed as a Chief Steward on board S. S. Wolverine he sustained injuries through the negligence of the respondents, or some of them. He asks for an award of damage, under the Jones Act, 46 U.S.C.A. § 688, and also for maintenance and cure.

■ S. S. Wolverine is owned by the respondent United States of America but was operated and controlled by the States Marine Corporation under time charter. Since the claim is negligence, there can be no doubt that the suit must be dismissed in any event, except as against respondent States Marine Corporation. Vitozi v. Balboa Shipping Co., Inc., 1 Cir., 1947, 163 F.2d 286.

I turn, therefore, to the claim of negligence as against the charterer. S. S. Wolverine was equipped with a self-refrigerating ice box, but had no apparatus for making ice for drinking purposes. And so in October 1942, while at Calcutta, she took on board some two tons of ice in cakes which were stowed in the meat box. Libelant was in charge of that meat box and was under a duty to see that it was properly stowed. His claim now is that on November 26, 1942, he entered the box for the purpose of taking inventory. He says that someone, against instructions, had placed a piece of ice weighing about fifty pounds on top of the full-size cakes, that the ship lurched in the sea way and that as a result he, libelant, was struck on the heel by the loose ice.

Battice was paid off S. S. Wolverine probably on January 2, 1943. Beyond doubt, he received treatment at the United States Marine Hospital for an abrased heel between January 11, 1943, and January 21, 1943. On January 28, 1943, he signed on another ship, namely, S. S. Ephraim Brevard, also operated by respondent States Marine Corporation. (He had been discharged from the hospital fit for duty on January 21, 1943).

During the second voyage Battice received the same wages and occupied the same billet as he had on board S. S. Wolverine. But he began to suffer with pains in his groin. It was ultimately discovered that whatever might be the source of those pains Battice had also contracted syphilis. His ticket was taken up and about April 17, 1943, he was beached in New York. From then until August 24, 1943, he received treatment at the United States Marine Hospital and also from a private physician of his own choosing, the latter confining his attention to the groin condition, which in all probability is directly attributable to a local infection (the heel condition) rather than to a generalized infection.

■ It is clear to me that Battice failed to sustain his burden of proof on the claim of negligence. He was responsible for the proper stowage of the ice box, and the evidence makes it obvious that he completely controlled access to the box. Battice did not even pretend to know who was responsible for leaving the ice in such condition that it could be disturbed by the motion of the ship. But the sole responsibility for proper stowage was his, and it was his negligence that was the proximate cause of the accident. I do not accept his suggestion that perhaps a messman violated his instructions. Even had Battice sustained this guess by proof, which he did not, the fact would still remain that it was Battice's duty to see to it that the ice box was at all times a safe place in which to work, and his violation of his own duty was thus the proximate cause, and the only proximate cause, of the damage. Were it relevant I would, of course, find that the conduct of Battice in failing to take precautions for his safety when he saw the condition of the box (as he should have) was contributory negligence as a matter of law. But the question of contributory negligence does

not arise since the carelessness of Battice, himself, was, as I have said, the only producing cause of the accident.

■■■ There is no basis for a claim of cure. The Bouker No. 2, 2 Cir., 1917, 241 F. 831. Undoubtedly, however, Battice is entitled to maintenance between January 2, 1943, the date when he was paid off S. S. Wolverine, and January 28, 1943, the date when he signed on S. S. Ephraim Brevard. It might be argued that the maintenance should cease on January 21, 1943, the date when Battice was discharged as fit for duty, but it seems reasonable to allow one week in addition.

■■■ Judging by the briefs, one of the main questions in the case is whether Battice is entitled to any maintenance over the period April 17, 1943, and August 24, 1943. It will be remembered that during this time Battice had been beached and was receiving treatment for a social disease. He bases his claim for maintenance, and possibly for loss of wages, although that is not clear, on the fact that at the same time he was also suffering from a groin condition produced by the injury to his heel. It is, of course, well established that a seaman forfeits maintenance and cure where his illness arises from his own vices or wilful misconduct. Zambrano v. Moore-McCormack Line, 2 Cir., 1942, 131 F.2d 537, 539. I should think that where two causes of disability concur, one susceptible of an award of maintenance and the other not, then the seaman is not entitled to maintenance under the doctrine of intervening cause. See Jackson v. Pittsburgh S. S. Co., 6 Cir., 1942, 131 F.2d 668, 670. I do not see how it is possible, in the circumstances of this case, to say that the disability existing between April 17, 1943, and August 24, 1943, can be traced, in whole or in part, to a cause which would support an award of maintenance.

Libelant is entitled to a decree without costs awarding maintenance at the rate of $5. per day for a period of 27 days (January 2, 1943, to January 28, 1943).

At the end of the trial I made certain findings which I will not here reiterate. I now supplement them by finding as a fact that the sole proximate cause of libel-ant's injury was his own negligence, and that his disability between April 17, 1943, and August 24, 1943, was produced by his own misconduct as a proximate cause. I draw the conclusions of law that respondent is not entitled to an award of damage based upon his claim of negligence, and that he is entitled to the award of maintenance which I have mentioned, and to nothing more.

Submit decree.