### NORTH ALASKA SALMON CO. v. LARSEN.

(Circuit Court of Appeals, Ninth Circuit.   February 1, 1915.)

No. 2445.

**1. ADMIRALTY ☞13—JURISDICTION—"MARITIME CONTRACT."**

A contract to render service as a seaman on a vessel owned by a salmon company on a voyage from San Francisco to its cannery in Alaska and return, and also as fisherman, beachman, trapman, and such other service as might be required by the company's superintendent, is a "maritime

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contract," and a suit thereon is within the jurisdiction of a court of admiralty.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 164–176; Dec. Dig. ☞13.

For other definitions, see Words and Phrases, First and Second Series, Maritime Contract.

Jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.]

2. SEAMEN ☞29—INJURY IN SERVICE—MEDICAL TREATMENT AND CARE.

A finding of the trial court that a shipowner did not furnish a seaman injured in its service with proper medical attention and care held sustained by the evidence.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. ☞29.]

3. SEAMEN ☞29—INJURY IN SERVICE—SUIT FOR FAILURE TO FURNISH PROPER CARE.

Where the personal negligence of a shipowner in failing to furnish proper medical attention and care to an injured seaman is alleged and proved, the court may make an allowance to the seaman for expenses of his care and for loss of time after the expiration of his term of service.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. ☞29.

Rights and liabilities of seamen as to medical treatment, see note to The Cuzco, 83 C. C. A. 186.]

Appeal from the District Court of the United States for the First Division of the Northern District of California; M. T. Dooling, Judge.

Suit in admiralty by Peder Larsen against the North Alaska Salmon Company. Decree for libelant, and respondent appeals. Affirmed.

D. Freidenrich, of San Francisco, Cal., for appellant.

F. R. Wall and I. F. Chapman, both of San Francisco, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The appellee shipped as a seaman on the Olympic for a voyage from San Francisco to the appellant's salmon cannery at Locanock, Alaska, and return. On July 12, 1912, while in that employment and working on a lighter which was alongside the appellant's dock, engaged in throwing fish into a bucket to be hoisted up to the wharf, he sustained an injury to his knee. In his libel he alleged that the appellant failed and neglected to furnish him with proper medical and surgical care and attention, and compelled him to work on board the Olympic after he was injured, that he did not and could not receive proper medical care at Locanock, and that he could and should have been sent by the appellant to Naknek, or to Koggiung, or to Dutch Harbor, where he could have received proper medical and surgical care and attention. Upon the evidence, the court below found that the appellant was negligent as alleged, and decreed that it pay the appellee $506, together with interest on said sum from December 21, 1912, the date of the filing of the libel, and the appellee's costs.

[1] We find no merit in the contention that the cause of suit is not

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

within the admiralty jurisdiction of the court, in that the appellee's contract for service as a seaman, fisherman, beachman, trapman, "and such other services as might be required" by the appellant's superintendent, was not a maritime contract. In The Minna (D. C.) 11 Fed. 759, the libelant was employed solely as a fisherman, and took no part in the navigation of the vessel, which went out every morning to the fishing grounds; the libelant sleeping ashore. It was held that he was entitled to proceed against the vessel for the recovery of his wages. Judge Brown said:

"All hands employed upon a vessel, except the master, are entitled to a lien if their services are in furtherance of the main object of the enterprise in which she is engaged. * * * I do not regard the fact that libelant slept upon shore at night, and there reeled out and mended the nets, as qualifying in any way the nature of his contract. These services were merely incidental and subsidiary to his main contract."

In Alaska Packers' Ass'n v. Domenico, 117 Fed. 99, 54 C. C. A. 485, this court affirmed the jurisdiction in admiralty of a contract made by men who acted as seamen on a voyage to and from salmon fishing grounds in Alaska to work as fishermen during the season, and assist in canning fish on shore, and in loading them on board for transportation, notwithstanding that the men while engaged in fishing slept on shore, and mended their nets and cared for the fish on shore. See, also, The Virginia Belle (D. C.) 204 Fed. 692; McRae v. Bowers Dredging Co. (C. C.) 86 Fed. 344; Disbrow v. The Walsh Brothers (D. C.) 36 Fed. 607.

[2] It is contended that the finding of the court below that the appellant did not furnish the appellee with proper care and attention is not sustained by the evidence, and the appellant relies upon the fact that it had in its employment a regularly licensed physician at Locanock, who attended the appellee, and it contends that thereby it discharged its full duty to him. The testimony was all taken in open court, with the exception of one deposition taken on behalf of the appellee. We must therefore accord to the finding of the court conclusive effect, unless there is absence of evidence to sustain it. There was evidence that after the appellee was injured he was sent to the bunk house, where his knee was painted with iodine by the doctor who was in the appellant's employment. The doctor was of the opinion that the injury was not serious, and that the appellee would be all right the next day. Three days later the doctor saw the appellee again, and told him there was nothing the matter with his knee, and he had better get out and go to work, and also told the beach boss in the appellee's presence that the appellee was lazy and had better be put to work, saying he would see the superintendent and tell him to give the appellee "lots of work." The doctor gave the appellee no further attention. On August 1st the beach boss sent the appellee on board the Olympic to work at mending sails, which he continued to do until August 23d, when his leg had got so bad he could walk on it only with great difficulty. He again came ashore to see the doctor. The doctor laughed at him, told him there was nothing the matter with his knee, and that all the matter with him was that he was lazy. The appellee resented this,

and personally assaulted the doctor. Thereafter the doctor gave him no further attention. There was evidence that at that time the appellee asked the superintendent to send him to Koggiung or Nushigak or Naknek, where there were good doctors, and said to him:

"It is up to you, Mr. Hale, to take care of me. It is up to you to get me to some other doctor where I can get treatment, because that doctor won't do nothing for me. He claims there is nothing the matter with me"

—and that, in answer to such requests, he was told, "We have no launches to spare."

The court below in the opinion said:

"I am satisfied from the evidence herein that the libelee did not furnish libelant with proper medical attention and care after his injuries, as the doctor at all times seemed to regard libelant's injuries as trifling, and libelant himself as a malingerer. It is evident, however, that the injury to libelant's knee was a grave one, which, if properly treated, would not have resulted so seriously."

We think the evidence in the case sustains the conclusion of the trial court.

[3] The court below awarded the appellee $86 for doctor's fees, $15 for medicines, and $405 as the amount which he could have earned during the period of his disablement of 4½ months after his discharge from the vessel. It is said that the court erred in awarding the appellee damages for loss of earnings after his discharge from the vessel, and for his expenses after such discharge, and the appellee cites authorities for the rule that the injured seaman is to be cured at the expense of the ship, but that he is not to receive any compensation or allowance for the effects of the injury, further than the expenses incurred in the cure, and that the permanent disability is not a ground for indemnity from the owners of the ship. But that is a rule which has been applied only in cases in which the vessel was without fault. It does not apply to cases in which personal negligence and default in furnishing care and attendance are alleged and proven. In The Troop, 128 Fed. 858, 63 C. C. A. 584, this court held that damages may be awarded a seaman on the ground of the negligence of the master in failing to furnish him proper care and medical treatment after his injury. There are cases, however, which hold that, even where there is no negligence, the end of the voyage does not end the obligation, if there were not sufficient time and facilities for the vessel to have done its duty. The Mars, 149 Fed. 731, 79 C. C. A. 435. In Dougherty v. Thompson-Lockhart Co. (D. C.) 211 Fed. 224, Judge McPherson awarded $500, with interest, to a seaman who was in a hospital for three months, where he was maintained and cured free of charge, but was unable to work for about nine months thereafter.

The decree is affirmed.