## THE GOVERNOR.

(District Court, N. D. California, First Division.   October 19, 1915.)

### No. 15848.

1. SEAMEN �köö11—INJURY IN SERVICE—MEDICAL TREATMENT.

Libelant, a fireman on a steamship, was severely injured by falling astride a pipe. The vessel arrived at Victoria, B. C., an hour later, and remained for three hours; but no physician was called and no treatment given, except by a fellow employé, until the ship reached Seattle, eleven hours after the injury. Libelant was in great pain. *Held*, that the nature of the injury was such that it should have been given attention at the earliest possible time, and that in failing to give it when the opportunity offered the master failed to perform his duty, and rendered the vessel liable in damages.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 39–44, 187; Dec. Dig. ⊙ööö11.]

2. SEAMEN ⊙ööö11—INJURY IN SERVICE—MEDICAL TREATMENT—JUDGMENT OF OFFICERS.

Due care requires that the judgment of the officers of a vessel when dealing with injured seamen should be exercised, not only with the knowledge they possess, but also with such as they can readily acquire.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 39–44, 187; Dec. Dig. ⊙ööö11.]

⊙öööFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by Thomas Morgan against the American steamship Governor; the Pacific Coast Steamship Company, claimant. Decree for libelant.

F. R. Wall, of San Francisco, Cal., for libelant.

McCutchen, Olney & Willard and Ira A. Campbell, all of San Francisco, Cal., for respondent and claimant.

DOOLING, District Judge. [1] Libelant, a fireman on board the steamship Governor, was injured by falling astride a pipe in the engine room; the external nature of the injury being a severe and visible laceration near the medium line in the vicinity of the rectum, and its internal nature being a rupture and laceration of the urethra. The accident occurred about 10 a. m., and an hour before the vessel arrived at Victoria where she remained for something over three hours. From Victoria she proceeded to Seattle, arriving there about 9 p. m., eleven hours after libelant was injured. There was no doctor on board, and none was called at Victoria. Nothing was done to the wound before the vessel arrived at Seattle, other than to cleanse it with warm water and peroxide and dress it with gauze. At Seattle libelant was taken to a hospital, where the wound was properly treated. The master did not visit libelant at any time after the injury, and whatever was done looking to his care was done by the first assistant engineer, though the chief engineer visited and had some conversation with him; the time of such conversation and its tenor being in dispute. He did not examine the injury. This action is to recover damages because libelant was not cared for at Victoria.

There is no claim that the ship was responsible for the original injury, or that libelant was not properly cared for after he reached Seattle. I have no doubt from the testimony that the injury was aggravated and rendered more difficult of treatment by the delay ensuing between the time of the accident and the time that libelant reached the hospital at Seattle. That libelant was very seriously injured is beyond question. The location and character of the injury and the severe shock to libelant's system rendered it imperative that he should receive treatment at the earliest possible moment. The wound was bleeding profusely, and libelant was in great pain, and although the extremely serious nature of the injury was not made clear to the first assistant engineer, who was the only officer that really concerned himself about the matter, until after the vessel had left Victoria on its way to Seattle, it seems to me that ordinary care and prudence required that during the three-hour stay of the vessel at Victoria a physician should have been called.

I know the rule is that the ship will not be held responsible for an error of judgment on the part of the officers, if their judgment is conscientiously exercised with reference to the conditions existing at the time. But I do not believe that, when the real conditions may be so easily ascertained as they could have been at Victoria in the present case, the officers should rely upon their own unskilled judgment to the detriment of the seamen under their care. The very location and external extent of the injury in question should have moved them to

ascertain its real nature, when that could have been done so easily and at such a comparatively trifling expense.

[2] I think that due care requires that the judgment of the officers when dealing with injured seamen should be exercised, not only with such knowledge as they possess, but also with such as they can readily acquire. There is some testimony that libelant expressed a desire to be carried to Seattle. In view of the uncertainty of the recollection of the first assistant engineer upon this point, I cannot find that this is true. But, if it were true, it would not, in my judgment, absolve the ship from the failure of the master, or those acting for him, to ascertain libelant's real condition at Victoria. I am firmly of the opinion that a due regard for the rights of seamen should require, and does require that in a case like the present, when an early opportunity is presented of easily ascertaining the nature and extent of an injury, the location and external appearance of which shows that it may be serious, the officers should take advantage of such opportunity, and failing to do so, they fail to accord to the seaman the care to which he is entitled.

The amount which should be awarded to libelant is not easy to determine. I think, however that for the increased pain and suffering, and the probable longer duration thereof due to the delay in treatment, it should not be less than $1,200, and a decree will be entered for such sum.