## THE GWYNEDD.

### (Circuit Court of Appeals, Third Circuit. December 8, 1915.)

### No. 2004.

ADMIRALTY ☞60—PLEADING—SUFFICIENCY OF LIBEL.

A court of admiralty is always liberal in the construction of pleadings, and where a libel sets out, although obscurely and as a secondary claim, a cause of action in rem within the jurisdiction of the court, and prays for general relief, it should not be dismissed, but its amendment should be permitted.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 482–496; Dec. Dig. ☞60.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in admiralty by Joseph Sessich against the tugboat Gwynedd. From a decree dismissing the libel, libelant appeals. Reversed.

For opinion below, see 220 Fed. 192.

W. M. Harris, of Philadelphia, Pa., for appellant.

Wm. Clarke Mason, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The libelant, Joseph Sessich, was a deckhand on the tugboat Gwynedd, which was under charter to the Philadelphia & Reading Railway Company. On January 1, 1913, while in the service of the tug, he was injured, and afterwards sued in rem to recover damages. Exceptions to the libel were sustained, and the suit was dismissed; this being the error complained of.

In substance the libel sets forth that, while the tug was employed in towing car floats on the Delaware river in the port of Philadelphia, the libelant and another deckhand were ordered on board one of the floats in order to make it fast to a pier; the libelant remaining on the float to attend to that end of the line. His companion stepped ashore to fasten the other end, but the first cleat he approached was either missing or broken, owing to the negligence of the owner of the pier. In the hurry and confusion that accompanied the effort to find another cleat on shore—the operation being at night, the tug being in motion, the weather being cold and freezing, and the line being coated with ice and hard to manage—the libelant's hand was caught between the rope and a cleat on the tug, and was severely and permanently injured. The negligence charged was failure to keep the pier in proper condition and repair by providing and maintaining suitable cleats, so that the float might be safely and seasonably moored.

Thus far it is evident that the libel sets forth no fault against the tug that would sustain an action in rem. The fault was chargeable against the owner of the pier, and of course a suit against the owner could only be in personam. But, as it happens, the Philadelphia & Reading Railway Company is also the owner of the pier, and we sup-

pose it to be likely that this fact may have had something to do with the adoption of the action in rem. We agree, however, that the common ownership of the tug and the pier should have no influence on the decision, whether the admiralty has jurisdiction of the present action. The remedy is peculiar, with its own well-established characteristics, and the rule has long been settled that a vessel cannot be held to account by a suit in rem, unless the vessel itself or some one identified with her has been at fault. Aurora Shipping Co. v. Boyce (C. C. A. 9th Cir.) 191 Fed. 967, 112 C. C. A. 372, and cases cited. The libel makes no such charge, and accordingly the tug filed exceptions, alleging that the negligence set up was the negligence of the owner of the pier, and that no fault was charged against the tug or its master or any of the crew, "in matters relating or pertaining to the construction, maintenance, repair, or management of the said tug Gwynedd, her tackle, apparel, furniture, boilers, engines, machinery," etc. The District Court agreed that the libel failed to set forth a cause of action in rem within the admiralty jurisdiction, and accordingly dismissed the libel. The Gwynedd (D. C.) 220 Fed. 192.

If this were the only matter of dispute, an appeal would not have been taken. The libelant concedes the soundness of the reason just stated, and the whole controversy arises out of the concluding portion of the libel, to which we have not yet referred. Informally and certainly with a good deal of obscurity, but still we think perceptibly, the libel does set up a claim based on the ruling in The Osceola, 189 U. S. 175, 23 Sup. Ct. 483, 47 L. Ed. 760, where the Supreme Court formulates the rule, inter alia, that a vessel and her owner are liable, in case a seaman falls sick or is injured in the service of the ship, to the extent of his maintenance and cure, and also for his wages at least as long as the voyage is continued—such recovery for maintenance and cure being permitted whether the injury was received by accident or by the negligence of the master or any of the crew. The libel details the extent of the libelant's injury, and also avers that he has been, and will be, obliged to expend money for medicine, for medical attendance, and for maintenance, in order to keep and cure himself, for which "as a seaman on said tug he claims reimbursement." There is also a prayer for general relief. This claim was brought to the attention of the District Court in the first argument on the exceptions, and was also made the single subject of a reargument; but the court continued to be of opinion that the libel "cannot be said to set forth any such cause of action, or to lay such damages. The cause of action is, generally speaking, negligence, and the particular negligence alleged is that of the owner of the pier." This we think is not precisely, although no doubt it is substantially, an accurate description of the libel as it stands; the other claim is there, although not distinct or plain. But, as was said in North Alaska Co. v. Larsen (C. C. A. 9th Cir.) 220 Fed. 96, 135 C. C. A. 661: "Courts of admiralty are always liberal in the construction of pleadings, especially against seamen, whose lives at best are hard, and are often spoken of as wards of the court." We think, therefore, that the libel contained sufficient to serve at least as a basis for amendment; and as it also contained a prayer for

general relief we are constrained to hold that, instead of dismissing the libel, and thus requiring a new action, the District Court should have directed the claim to be amended, so that the right to recovery should be put distinctly and solely upon whatever right the libelant may possess to recover for maintenance and cure. The Kenilworth (C. C. A. 3d Circ.) 144 Fed. 376, 75 C. C. A. 314, 4 L. R. A. (N. S.) 49, 7 Ann. Cas. 202; The Mars (C. C. A. 3d Cir.) 149 Fed. 729, 79 C. C. A. 435; Dougherty v. Thompson Lockhart Co. (D. C.) 211 Fed. 224. He does not claim wages, so that the only ground of recovery would be such right as may exist to the cost of maintenance and cure. We express no opinion as to the extent of his right; we simply place our ruling on the ground that he has obscurely put forward a cause of action in rem within the admiralty jurisdiction, and should be allowed to amend and to make out whatever case may lie within his power under the rule in The Osceola.

The decree, therefore, must be reversed, and the District Court is directed to permit an amendment in accordance with this opinion (if the libelant shall so elect), and thereafter to proceed with the cause.