### THE VAN DER DUYN.

(District Court, E. D. New York. July 3, 1918.)

1. SEAMEN ⬤➡11—MEDICAL ATTENTION.

An action will not lie against the ship for an error of diagnosis on the part of the officers with respect to an injury to one of the crew.

2. SEAMEN ⬤➡11—INJURIES TO COAL PASSER—MEDICAL ATTENTION.

Where coal passer broke his arm, and ship's officers gave it merely antiseptic dressing, ship was liable for aggravated condition and additional pain suffered through rough treatment by reason of officers honestly thinking arm was not broken.

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. SEAMEN ⊚⇒11—INJURIES TO MEMBER OF CREW.

A ship owes it to an injured seamen to take reasonable precautions to furnish reasonable aid, even to the extent of taking the man to the nearest place for remedy.

4. SEAMEN ⊚⇒11—MEDICAL ATTENTION.

Mere antiseptic dressing, without knowledge of what is proper treatment, is not sufficient for the assumption of qualification to diagnose an injury consisting of a broken arm, and should not be classed as an error of judgment.

In Admiralty. Libel by Alfred Testut against the steamship Van der Duyn, claimed by the New York & Cuba Mail Steamship Company. Decree for libelant.

Silas B. Axtell, of New York City, for libelant.

Kirlin, Woolsey & Hickox, of New York City (L. De Grove Potter and Harry D. Thirkield, both of New York City, of counsel), for claimant.

CHATFIELD, District Judge. The libelant was a coal passer, who received a fracture of the ulna of his right arm, on the ship Van der Duyn, upon the evening of the 21st of April, 1916, when the vessel was at sea. The libelant's arm was caught between a bucket of ashes and the upper edge of an opening in the side of a ventilator. The bucket had been hoisted up to the level of this doorway, through which it was to be pulled back out on the deck of the vessel. Members of the crew were working a winch which was doing the hoisting, and the evidence indicates that the accident occurred through failure on the part of those operating this winch to use care. There was some intimation that the winch was not so constructed as to work safely unless the operators observed certain precautions in moving a lever, which would not lock itself into rest at a neutral point when the winch was stopped. But no evidence of negligence or unseaworthiness has been shown by the libelant, and he was apparently injured through the carelessness of some other seaman upon the vessel.

The mate of the vessel attempted to dress the injury, and treated it as a sprain or lacerated bruise. When the vessel arrived at Havana, some five days later, the arm was badly swollen, and was examined by a doctor; but the libelant was not sent to a hospital, and the vessel came on to New York, where some two weeks after the accident the libelant himself went to the Long Island College Hospital and had his arm treated in a most skillful and successful manner. An X-ray then taken showed a badly overlapping fracture, necessitating an operation upon the bone itself, and it is impossible, as the operating physician is now out of the country, with the United States Army, to learn more than is shown by the hospital record and the X-ray plate. It appears that a small portion of bone was removed in order to set the arm as well as might be, that the fracture has entirely healed so far as union of the bones is concerned, and that the libelant has recovered motion and muscular strength in his wrist and forearm, except for a slight inability to complete rotation of the humerus upon the ulna, owing to the presence of some bony projection on one of the fractured surfaces,

which could not be entirely restored to normal condition at the time of the operation. The libelant has some slight muscular atrophy, due to this interference with the use of his forearm and to the muscular injuries relating back directly to the fracture and the operation. But his muscular strength is, in general, only slightly interfered with. He endured considerable pain, and testifies to harsh treatment by the mate, who thought that he was shamming, and endeavored to see if the bones were broken by testing their movements, according to the libelant's story, by bending the bones across his knee.

It must be held, upon the testimony, that if the officers of the ship had known that his arm was fractured, or if the doctor at Havana had been certain that the arm was fractured, he might have received at Havana treatment which would have alleviated his suffering, and would have secured him more sympathetic treatment on the voyage to New York. When the vessel arrived at New York he was not taken ashore, and apparently the ship's officers accused him of shamming. He took the matter into his own hands by technically deserting and going to the hospital, a course which has since been proved justified, and which bears out to some extent the libelant's contention in the case.

[1-4] The libelant claims damages against the vessel for unseaworthiness, and for failure of the officers to correctly diagnose his injury, or to give him proper care. An action will not lie against the ship for an error of diagnosis on the part of the officers with respect to an injury to one of the crew. The Sarnia, 147 Fed. 106. Nor does the libelant in this case make out, by a preponderance of testimony, his contention that transfer to a hospital at Havana would have resulted in any better permanent restoration of his arm, after the fracture had been treated by operation, which apparently would have been necessary in any event. The libelant did receive care and maintenance, in so far as transportation to New York and expert hospital treatment, with the payment of expenses during that time, was concerned.

The present condition of the libelant's arm and the testimony as to the operation performed in the Long Island Hospital in Brooklyn, when viewed from the statements of the witnesses as to the appearance of the injury at Havana and during the voyage, indicate that the operation was made necessary by the fracture, and not from lack of treatment, and that the delay may have added little to the permanent injury, which would have resulted in spite of operation at any time. In fact, the testimony indicates that, if a careful examination had been made at Havana, the operation itself would have been postponed until the vessel arrived in New York. But undoubtedly the libelant suffered additional pain and discomfort, and was not given considerate treatment by the officers of the vessel, who concluded that he was shamming, and who looked upon the injury as a mere bruise or laceration of the flesh. The treatment, while useful in preventing infection, was not that which a possibly broken arm should have received, and the evidence supports a finding that the officers were not justified in relying upon their own opinion or in assuming from the examination given by the quarantine doctor at Havana that no other treatment was necessary. Their failure to take such steps as the situation evidently called for, while uninten-

tional on their part, can nevertheless not be overlooked, and the vessel is certainly liable for that failure, as the vessel owed it to the seaman to take reasonable precautions and to furnish reasonable aid, even to the extent of taking the man to the nearest place for remedy. The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955. In default of this the vessel was liable for the consequences of failure to do so, even if the officers were honest in their opinion that the man was shamming. An error of judgment on the part of the officers means an honest error in choosing the method of treatment. It presupposes that they did the best which they could. But, as is said in the case of The Governor (D. C.) 230 Fed. 857, mere antiseptic dressing, without knowledge of what is proper treatment, is not sufficient for the assumption of qualification to diagnose, and should not be classed as an error of judgment. The vessel should not be absolved from liability, if the ignorance of the officers is merely a basis for their utter failure to appreciate that they should do something to supplement their own lack of knowledge.

In the case at bar the libelant was entitled to different care and treatment of a possible fracture than that which he received. For the increased pain and suffering which he experienced, and for the slight permanent injury, which might have been avoided by careful treatment of the fractured arm, an award of $750 will be granted.