### THE GOLDEN GATE.

### STATE BANK OF SAN PEDRO v. MARINCOVICH et al.

(Circuit Court of Appeals, Ninth Circuit. January 22, 1923.)

No. 3867.

1. Maritime liens ⬡�center64—Jurisdictional allegation in intervening libels held unnecessary.

That intervening libels in a suit to enforce maritime liens did not allege that the vessel was within the jurisdiction of the court is immaterial, where the vessel was then held by the marshal under process issued on the original libel.

2. Evidence ⬡�center43(2)—Court takes notice of its own records in the case.

Every court takes judicial notice of its own records in the same case.

3. Admiralty ⬡�center53—Storage of vessel by stipulation pending suit to enforce liens held not to take it out of control of the court.

That a vessel held by the marshal under process in a suit to enforce liens was by stipulation of the parties placed in storage by him to save costs did not take it out of his custody, nor out of control of the court.

4. Maritime liens ⬡�center64—Libels held sufficient.

That libels do not allege in terms that the supplies and repairs for which liens are claimed were furnished under contract does not render them insufficient where the facts alleged clearly show such to be the case.

5. Maritime liens ⬡�center21—Lien exists for supplies furnished on order of owner.

Under Act June 23, 1910, §§ 1, 2 (Comp. St. §§ 7783, 7784), a lien exists for repairs and supplies made or furnished on order of the owner, who is also in control as master though the vessel may be under charter.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit in admiralty by Mitchell Marincovich, doing business as the San Pedro Grocery & Meat Market, and others, against the gasoline launch Golden Gate; the State Bank of San Pedro, claimant. Decree for libelants, and claimant appeals. Affirmed.

John J. Monahan, of San Pedro, Cal., and Page & Hurt, of Los Angeles, Cal., for appellant.

Loucks & Phister, of San Pedro, Cal., and Lawler & Degnan, of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The appellee San Pedro Grocery and Meat Market filed in the court below a libel against the gasoline launch Golden Gate, alleging, in substance, the launch to be a domestic vessel owned by some person or persons residing in the city of Los An-

geles, Cal., but at the time unknown to the libelant, and that while in the port of San Pedro, city of Los Angeles, between certain named dates, the libelant, at the request of the master of the launch and upon its credit, furnished certain specified food and material, of the value of $672.22, all of which was necessary and proper to equip the launch for an intended voyage, for none of which had the libelant been paid; that the vessel was at the time in the port mentioned and within the jurisdiction of the court. The record shows that, in pursuance of the prayer of the libel, monition was duly issued, her master and all persons claiming any right, title, or interest therein cited to appear and answer the matters alleged, and the vessel and her equipment taken into custody of the marshal, who published due notice as provided by the rules of the court. Subsequently a number of intervening libels were filed against the vessel by persons and corporations furnishing to it various supplies under like conditions and, in some instances, for the value of repairs made upon the vessel.

[1, 2] By stipulation of the respective parties the intervening libelants were permitted to join their several libels. Most of the libels in intervention failed to allege that the vessel was within the jurisdiction of the court, and on that ground exceptions were filed to them. A sufficient answer to the objection is that the court had judicial knowledge of the fact that the vessel was within its jurisdiction, having been arrested by and taken into the possession of the marshal under and in pursuance of the monition issued upon the original libel, and in whose possession, according to the record, the vessel still remains. Every court takes judicial notice of its own records in the same case. Bienville ·Water Co. v. Mobile, 186 U. S. 212, 217, 22 Sup. Ct. 820, 46 L. Ed. 1132; Withaup v. United States, 127 Fed. 530, 536, 62 C. C. A. 328; and cases there cited.

[3] Jurisdiction of the vessel having been acquired by the court by its seizure under and in pursuance of the original libel, it is manifest, we think, that such jurisdiction continues so long as the custody of the res remains in the court, with the consequent duty of the court to entertain and determine all rights and claims that may be set up in or to the res. In one of the briefs for the claimant and appellant it is said that:

"For all that appears from the record, the vessel might have escaped from the marshal or might have, by stipulation of the parties, been released from his custody. And if the court would permit me to speak without or outside of the record, this latter is exactly what did happen, for on August 10, 1921, before the filing of any intervening libels herein, the following stipulation was brought to the office of claimant's proctor by Mr. Phister proctor for libelants and interveners, except Standard Oil Company, and the vessel was forthwith released by the marshal pursuant thereto."

The brief then setting out the following stipulation as the basis for the latter suggestion:

"It is hereby stipulated, by and between John J. Monahan, proctor for claimants, and Loucks & Phister, proctors for libelants and interveners, that the United States marshal may place the gasoline launch Golden Gate in storage in Fellows & Stewart Shipbuilding Yards, Wilmington, Los Angeles county, California, during the pendency of the above-entitled libel, and that

the said parties thereto will save the said marshal harmless from any claim for damages to said vessel, her apparel, furniture, tackle, etc., while in storage, as aforesaid.

"Dated this 10th day of August, 1921."

Of course, there could be no presumption that the seized vessel "escaped from the marshal," and conceding that the stipulation thus referred to can be properly considered, we are of the opinion that the vessel put in storage by him under the circumstances stated, for the evident purpose of saving costs, must be considered in his possession and control, and therefore within the jurisdiction and control of the court.

The exceptions and objections taken to the several libels, based on the contention that they do not allege that the cause of action is maritime, and therefore within the jurisdiction of admiralty, are not well taken, for each and all allege that the supplies, material, and repair work for which the several libels were brought was furnished and the work done upon the vessel in question on the order of her owner and master and on the sole credit of the vessel, and was necessary to properly equip her for her intended voyages. The facts alleged, therefore, clearly show that each of the causes of action thus declared on was maritime and within admiralty jurisdiction. Nothing more was needed to show a valid cause of action than to allege that the supplies, material, or repair work so furnished and done was of a stated value and had not been paid for. The record shows that these requirements were met in each of the libels, and that the supplies furnished the vessel, as well as the repair work that was done upon her, were necessary for the fishing business in which the vessel was engaged for her contemplated voyages, we think is shown by the evidence.

[4] The point is made for the appellant that none of the libels in terms alleges that the cause of action stated arose out of contract, the complete answer to which is that the facts alleged clearly show such to be the case. See California-Atlantic S. S. Co. v. Central Door & Lumber Co., 206 Fed. 5, 7, 124 C. C. A. 139; The Gwynedd, 228 Fed. 177, 142 C. C. A. 533; Jolivet v. City of Seattle (D. C.) 226 Fed. 963.

[5] The only other point we deem worthy of special mention is the claim that the launch in question was under charter, under the terms of which her owner and master was acting for the charterers. It is conceded that one Visco Blagich was the owner and master of the vessel, and the proof is clear to the effect that all of the supplies that were furnished by the libelants and all of the work that was done were furnished and done on his order. The only evidence even tending to show any charter of the vessel is the testimony of Blagich himself, which is far from showing it.

We agree with the proctors for libelant Standard Oil Company that the effect of his agreement with the crew was nothing more than "a hiring of the crew, with the agreement to pay them out of the profits of the venture," in a specified way; but, conceding that the agreement was in effect a charter, the Act of Congress of June 23, 1910, entitled "An act relating to liens on vessels for repairs, supplies, or other necessaries," in terms declares:

"That any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." Comp. St. § 7783.

And by section 2 of the act it is declared:

"That the following persons shall be presumed to have authority from the owner or owners to procure repairs, supplies and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel." Comp. St. § 7784.

36 U. S. Stat. at Large, 604, 605.

The decree is affirmed.