Filed 12/4/13  L.W. v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| L.W.,<br><br>       Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>       Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>       Real Party in Interest. | A139776<br><br>(San Francisco County<br>Super. Ct. Nos. JD10-3166 &<br>JD10-3166A) |

L.W. (mother) seeks writ relief from a juvenile court order terminating family reunification services for two of her children and setting a permanent plan selection and implementation hearing pursuant to Welfare and Institutions Code section 366.26.[1] (Cal. Rules of Court, rule 8.452.) Mother claims the court erred in taking judicial notice of reports submitted in prior hearings and in finding a substantial risk of detriment to the children's safety, protection, and physical and emotional well-being were they returned to her. (§ 366.22, subd. (a).) We shall deny the writ petition.

**Factual and Procedural Background**

Mother has five children and an extensive history with child protective services. At issue here are dependency proceedings concerning her youngest children, a son born

---

[1] All further section references are to this code except as noted.

1

in 2000 and daughter born in 2003. In May 2010, the San Francisco Human Services Agency (the agency) took custody of the children and filed a petition alleging that mother has substance abuse and mental health problems, that her ability to care for the children deteriorated after the recent death of the children's father, and that her son's disruptive behavior at school indicated serious emotional damage. (§ 300, subds. (b), (c).) Mother submitted to the allegations in October 2010. The court declared dependency and ordered reunification services. In April 2012, the court returned the children to mother's custody with family maintenance services.

A few weeks later, the agency resumed custody and filed a supplemental petition. (§ 387.) Mother had been in a physical fight with her live-in boyfriend in which she sustained a neck laceration requiring stitches. The children were present during the fight. The petition alleged that mother has a history of being in relationships characterized by domestic violence, putting the children at substantial risk of harm. The court sustained the allegations following a contested hearing in July 2012. The court placed the children with a relative and ordered reunification services addressed to domestic violence, substance abuse and mental health issues.

A six-month review hearing was held in January 2013. The agency reported that mother was attending domestic violence classes and visited the children but failed to submit to drug testing over the previous six months. Mother also refused to allow the social worker to visit her home to determine its occupants and assess its safety. The agency recommended continued reunification services and the court adopted the recommendation.

In August 2013, in advance of a contested 12-month review hearing, the agency reported that mother had not visited her children for over a month and was discontinued from the domestic violence program in July 2013 for "excessive absenteeism" over the previous two months. Mother also continued to refuse a home visit by the social worker. The agency reported: "During the course of this dependency, the Court has provided the mother various opportunities to address the safety issues for herself and the minors, however she failed to take advantage of them. Since the initial removal of the children

2

from her care and home on May 15, 2010, the mother's behaviors and attitudes have not waivered or changed. She blamed the Agency for removing the children then, and she still blames the Agency [for] keeping the children from her. The mother was not forthcoming with the Agency then, and she is still not forthcoming with the Agency today. The mother was not cooperating and availing herself to work with the Agency then, and she is still not availing herself and cooperating with the Agency today. The mother has minimized the effect that the domestic violence has had on her and the children's safety, and she continues to do so today." The agency recommended termination of reunification services.

Mother testified that she had not visited her children for a month because her wallet was stolen and, without her identification card, could not cash the transportation check provided by the agency. Mother said she did not notify the agency of the situation because "I don't have any type of communication" or a good working relationship with the social worker. Mother denied being terminated from the domestic violence program, which she characterized as strictly an anger management program that never addressed domestic violence. Mother said she discussed domestic violence in individual therapy sessions.

The court adjourned for a week to review materials and resumed the hearing on September 6, 2013 for decision. When the hearing resumed, the judge stated that she "spent hours on" the case familiarizing herself with the facts and prior proceedings. The judge stated: "I have read the transcript of the proceedings, I have been through the entire file. I have read every report going back to the first detention, I am taking judicial notice of those . . . and I will explain that part of the reason I wanted to do that was because this matter largely has not been in front of me, it's been in front of other bench officers who were here over the history of the case. And I wanted to have a better sense of how things had progressed and what some of the challenges have been."

The court found that mother was provided reasonable reunification services and failed to participate fully. The court determined that returning the children to mother "would create a substantial risk of detriment to their safety, protection, or physical or

emotional well-being." The court terminated reunification services and set a hearing to determine a permanent plan for the children's placement. Mother filed a timely petition seeking writ relief from the court's order.

## Discussion

Mother claims the court improperly took judicial notice of the truth of hearsay allegations contained in agency and child advocate reports submitted in prior hearings and relied upon that information at the 12-month review hearing to find detriment to the children. Mother's argument rests upon the court's opening remarks at the review hearing, in which the court explained that it had reviewed the case file "to have a better sense of how things had progressed and what some of the challenges have been." The court said: "I have been through the entire file. I have read every report going back to the first detention, I am taking judicial notice of those" reports.

A judge's review of the case file is proper procedure and a court is authorized to take judicial notice of court records. (Evid. Code, § 452, subd. (d).) In fact, "[e]very court takes judicial notice of its own records in the same case." (*The Golden Gate* (9th Cir. 1923) 286 F. 105, 106.) In taking judicial notice, a court may " 'take judicial notice of the *existence* of judicial opinions and court documents, along with the truth of the results reached – in the documents such as orders, statements of decision, and judgments – but cannot take judicial notice of the truth of hearsay statements in decisions or court files, including pleadings, affidavits, testimony, or statements of fact.' " (*People v. Harbolt* (1997) 61 Cal.App.4th 123, 126-127.) "[A] court cannot take judicial notice of hearsay allegations as being true, just because they are part of a court record or file." (*In re David C.* (1984) 152 Cal.App.3d 1189, 1205, italics omitted.)

While the court here spoke broadly about taking judicial notice of "every report going back to the first detention," we do not understand this to mean that the court improperly took judicial notice of the truth of facts alleged in those reports. Mother points to the court's mention of child advocate reports describing the children's improved behavior when living with the caretaker as proof the court relied on hearsay allegations. The same matter was the subject of testimony at the hearing and the admitted agency

4

report. The court was entitled to take judicial notice of the *existence* of prior reports of behavioral problems with the children when in mother's care in order to have, as it put it, "a better sense of how things had progressed and what some of the challenges have been." Even if, as mother contends, the court accepted the *truth* of statements made in the prior reports, those statements were cumulative to other evidence properly considered by the court and thus harmless.[2]

Mother disputes the sufficiency of the evidence supporting the court's finding that returning the children to her would be detrimental to them. At a child dependency review hearing, "a juvenile court must 'order the return of the minor to the physical custody of his or her parent or guardian unless, by a preponderance of the evidence, it finds that return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor.' " (*In re John V.* (1992) 5 Cal.App.4th 1201, 1211.) "When an appellate court reviews a sufficiency of the evidence challenge, we may look only at whether there is any evidence, contradicted or uncontradicted, which would support the trier of fact's conclusion. We must resolve all conflicts in favor of the court's determination, and indulge all legitimate inferences to uphold the court's order." (*Id.* at p. 1212.)

The agency presented evidence that mother "has minimized the effect that the domestic violence has had on her and the children's safety" and failed to "mitigate the safety concerns that necessitated . . . removal of the children from her home." Mother refused to allow the agency access to her home to confirm that she no longer lived with the man who abused her and to assess the safety of the home for the children. Mother "instructed [the social] worker not to visit her home, despite being informed about the purpose of the home visit." In the months leading up to the review hearing, mother

---

[2] Mother claims improper judicial notice is a structural error in the proceedings that mandates reversal without regard to prejudice. We disagree. Very few errors have been "categorized as structural." (*In re James F.* (2008) 42 Cal.4th 901, 917.) "Errors that can 'be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt' [citation] generally are not structural defects." (*Ibid.*)

stopped attending domestic violence classes and stopped visiting her children. Mother points to her testimony disputing several aspects of the agency's evidence, including her claim that the classes were directed to anger management rather than domestic violence. But we do not reweigh the evidence or the credibility of witnesses on appeal. The agency's evidence, which the court was entitled to credit, fully supports the finding that returning the children to mother would be detrimental to their well-being.

## Disposition

The petition for extraordinary relief is denied on the merits. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 894.) Our decision is final immediately. (Cal. Rules of Court, rule 8.490(b)(3).)

_____
Pollak, J.

We concur:


_____
McGuiness, P.J.


_____
Jenkins, J.

A139776